**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA**

v.

**Philip J. ASSIRAN, Receiver of Macon Construction and Engineering Corp., et al.**

**Civ. A. No. 67–445.**

United States District Court
D. Massachusetts.

Sept. 10, 1968.

Samuel H. Cohen, Cohen & Galvin, Boston, Mass., for American Cas. Co. of Reading, Pa.

Morris Michelson, Henry Friedman, Boston, Mass., for Rhode Island Hospital Trust Co.

## OPINION

WYZANSKI, Chief Judge.

This interpleader action has been brought by American Casualty Company of Reading, Pennsylvania, the surety on a Miller Act (40 U.S.Code § 270a et seq.) bond conditioned upon the principal's payment to all persons supplying labor and materials in the prosecution of the contract. Every material fact has been stipulated.

Macon Construction and Engineering Corporation (Macon), the principal named in the bond, has as its president and sole stockholder Seymour Kaplan. The bond is in the amount of $49,959.16.

Twelve different claimants have filed claims totalling $55,269.96. Ten of the claimants are by common agreement entitled to be paid, and with respect to them there is no dispute. The surety disputes the two remaining claims, not on the ground of the amount, but on the sole ground that neither is covered by the bond. The two claims in dispute are those of Attleboro Equipment and Rental Corporation (Attleboro), (a Massachusetts corporation) in the amount of $4,807.28 and Seymour Kaplan, doing business as I & E Trucking Company (I & E) in the amount of $4,856.45. The respective claimants of each of those claims have assigned them to Rhode Island Hospital Trust Company.

I & E leased to contractors trucks owned by it and bearing its name. It had its own employees and equipment, carried its own workmen's compensation insurance, paid its own income taxes, and on all occasions sent its own bills. It served various unaffiliated companies and also Macon, though so far as appears only on the one occasion which gives rise to the claim now in litigation.

Kaplan was one of the organizers of and later became the principal guiding person in Attleboro. Attleboro had its own books, records, and stationery, and paid its own taxes. All the incorporators of Attleboro were on the payroll of Macon but none was on the payroll of Attleboro. Attleboro owned trucks and bulldozers which it leased to third parties and for which it charged rent, represented by bills to those third parties. Macon sometimes supplied its employees to Attleboro as operators of the latter's vehicles. In some such cases, Macon would collect from third parties and then pay over to Attleboro the charge attributable to the use of Attleboro's vehicles, but would retain the portion of the third party's payment attributable to the operator's services.

Upon the foregoing facts the issue is whether under the Miller Act and the bond made pursuant thereto a surety [such as American Casualty Company of Reading, Pennsylvania] is liable to creditors [Attleboro and I & E whose claims have been assigned to Rhode Island Hospital Trust Company] who are under the same common control as the principal [Macon].

The facts stipulated make it incontrovertible that Kaplan controls (1) Macon, the principal, through his ownership of all its stock and through his presidency of the company, (2) I & E, an unincorporated proprietorship wholly owned by Kaplan, and indeed nothing but a style under which Kaplan conducted an individual business, and (3) Attleboro, which Kaplan organized and guided.

The purpose of a Miller Act bond is to protect those suppliers of labor and materials who are not part of "the family" of the principal and who are, as it were, strangers dealing without opportunity for knowledge of the principal's resources and without a common commitment in joint ventures.

As Circuit Judge Barnes rightly ruled in United States for the Use of

Briggs v. Grubb, 9th Cir., 358 F.2d 508, 512:

"While a Miller Act payment bond does make the surety liable for labor and materials furnished by a subcontractor when the contractor under the bond defaults, such a bond does not make the surety liable for monies expended on the contract by a partner or joint venturer of the contractor under the bond. This principle has been settled by cases interpreting the coverage of the Miller Act and its statutory predecessor, the Heard Act. Hardaway v. National Surety Co., 211 U.S. 552, 29 S.Ct. 202, 53 L.Ed. 321 (1909); St. Paul-Mercury Indemnity Company v. United States, 238 F.2d 917 (10th Cir. 1956); United States [for Use and Benefit of Walker] v. United States Fidelity & Guaranty Co., 4 F. Supp. 854 (D.Wyo.1933); National State Bank of Newark v. Terminal Const. Corp., 217 F.Supp. 341 (D.N.J. 1963)."

■ The foregoing doctrine has been applied to those who enter into a co-adventure with the principal, Hardaway v. National Surety Co., 211 U.S. 552, 559, 29 S.Ct. 202, 53 L.Ed. 321, to subsidiaries of the principal, cf. Continental Casualty Co. v. United States for Use and Benefit of Conroe Creosoting Co., 5th Cir., 308 F.2d 846 and to a corporation controlled by the same individual who controls the principal named in the bond, National Surety Corporation v. United States, 5th Cir., 378 F.2d 294, 295, 296.

■ The above reasoning leads to the conclusion that Rhode Island Hospital Trust Company as assignee of I & E and Attleboro may not recover on either of the assigned claims.

■■ The same result could be reached by another route—that the operations of the two assignors, I & E and Attleboro, were so commingled with those of Macon, the principal obligor under the bond, that the claims covered by the assignment are not within the protection of the Miller Act. St. Paul-Mercury Indemnity Co. v. United States, 10th Cir., 238 F.2d 917.

Judgment denying claims assigned to defendant Rhode Island Hospital Trust Company.